# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CRAIG MARTEN,

        *Plaintiff*,

vs.

HAROLD GODWIN,
RONALD RAGAN,
and JAMES KLEOPPEL,

        *Defendants.*

Case No. 08-4031-EFM

## MEMORANDUM AND ORDER

Plaintiff, Craig Marten, is a former student in the University of Kansas' Non-Traditional Pharm.D. program. Mr. Marten was dismissed from the program after he was found to have engaged in academic misconduct. Mr. Marten believes that Defendants, Professors Harold Godwin, Ronald Ragan, and James Kleoppel, falsely accused him of academic misconduct in retaliation for complaints that he had lodged against Defendant Ragan and the program generally. Based on this belief, Mr. Martin filed this suit, alleging both a 42 U.S.C. § 1983 First Amendment retaliation claim and a state-law defamation claim. Defendants have now moved for summary judgment on both of these claims (Doc. 38). For the reasons stated below, the Court grants Defendants' motion.

**Background**[1]

Desiring to advance his pharmaceutical career, Plaintiff applied to the University of Kansas' Non-Traditional Pharm.D. ("NTPD") program sometime in 2001.[2] Plaintiff's application for admission was accepted by the University in August 2001. However, instead of starting the program in the fall semester of 2001, Plaintiff deferred his enrollment until the spring semester of 2002.

Not long after he started, Plaintiff began expressing concerns he had about how the program was being administered. Plaintiff first expressed his concerns to Dean Sorenson.[3] During a March 2002 phone call, Plaintiff informed Dean Sorenson that Defendant Ragan, director of the NTPD program, had not responded to Plaintiff's multiple requests to give him ten points for a question that had been thrown out on an exam. In addition, he also raised his objection to the semester he set out, the fall semester of 2001, counting toward the time he had to complete the program.[4] According to Plaintiff, three to four hours after he phoned Dean Sorenson, Defendant Ragan called him in a rage, threatening to have him "kicked out of the school and [stating] that [he had] better pick another profession."[5]

---

[1] A number of Plaintiff's facts are based on testimony that was not made on personal knowledge. Pursuant to Fed. R. Civ. P. 56(e), the Court has disregarded these facts.

[2] The NTPD program is designed to enable practicing pharmacists to extend their education, enhance their clinical skills, and complete Pharm.D. training while remaining in the workforce. Toward this end, the program's courses are offered online, thus allowing its students to participate remotely from wherever they live or work.

[3] According to an affidavit prepared by the Director of the University of Kansas' Department of Human Resources and Equal Opportunity, no Dean at the University of Kansas has the surname Sorenson. However, there is an administrative assistant employed in the Office of the Vice Chancellor for External Affairs with that surname.

[4] From the time their application is accepted, students have five years to complete the general program and three years to complete the didactic portion. Plaintiff claims that Defendant Ragan told him sometime before he started the program that if he was to sit out a semester that that semester would not count toward these time limits.

[5] Plaintiff's evidence on this issue is conflicting. Based on the manner in which the facts in Plaintiff's affidavit are arranged, it appears that Defendant Ragan made these comments shortly after Plaintiff phoned Dean Sorenson in March 2002. *See* Doc. 48-2, p.3. However, in the complaint that he filed with this Court and in one of the complaints

Plaintiff made his next complaint in an email he sent Dr. Robert L. Shelton, Ombudsman for the University of Kansas, on May 10, 2002. In this email, Plaintiff expressed his concern that he had received an incorrect grade on several of his assignments. On May 14, 2002, Plaintiff sent Dr. Shelton another email complaining about how his assignments were being graded.[6] In addition to these emails, between May 12 and 19, 2002, Plaintiff also submitted four complaints to the Better Business Bureau of Northeast Kansas. Following these complaints, Plaintiff sent numerous emails to the American Council on Pharmaceutical Education ("Council") between July 2, 2002, and September 17, 2002.[7] Plaintiff has offered no evidence that any of the Defendants *actually knew* of these complaints and emails. However, Plaintiff's evidence does show that the Associate General Counsel of the University of Kansas, on June 24, 2002, sent Defendant Ragan a copy of the letter she mailed to the Better Business Bureau in response to inquires that the Bureau had made regarding Plaintiff.

Plaintiff claims that he began getting retaliated against almost immediately after he started complaining about the program and Defendant Ragan.[8] According to Plaintiff, the first retaliatory act took the form of an email sent by Dr. Shireman, a professor in the NTPD program, on March 7,

---

he mailed to the Better Business Bureau of Northeast Kansas, Plaintiff stated that the comments were made on May 9, 2002. Because fact seven and the general arrangement of Plaintiff's statement of uncontroverted facts supports the conclusion that the comments were made in March, *see* Doc. 48, pp.12-13, the Court will assume that that is when the comments were actually made.

[6]Plaintiff alleges that he had numerous conversations with Dr. Shelton through the time he was expelled. Plaintiff, however, does not state what was discussed during these conversations.

[7]On September 16, 2002, Dr. Wadeline from the Council sent an email to Plaintiff informing Plaintiff, among other things, that he was "unable to find anything in [Plaintiff's] submissions that indicates that the School has offended any of the accreditation standards and/or guidelines." The Dean of the School of Pharmacy, Jack Fincham, was cc'd on this email.

[8]In addition to the retaliatory acts described *infra*, Plaintiff also claims that he was subject to internet harassment, refusal to respond to emails, and lowering of grades. Plaintiff does not state, though, who took such actions or when they occurred.

2002. In this email, Dr. Shireman suggested ways that Plaintiff could improve his responses to the problems assigned by her and asked Plaintiff "to request information from [her] in a more polite, patient, and professional tone." The second act seems to have occurred on May 13 when Defendant Ragan sent Plaintiff a misleading email on what were the proper steps for appealing a grade. The third transpired in September when Defendant Kleoppel accused Plaintiff of academic misconduct. Kleoppel's accusation was premised on the fact that one of Plaintiff's answers to a short-answer question contained a direct quote from an internet site, but did not contain a source citation.[9] Defendant Kleoppel informed Plaintiff of his conclusion during a telephone conversation that he had with Plaintiff on September 23, 2002.[10] The effect of Defendant Kleoppel's determination was that Plaintiff was given a zero on the assignment, Defendant Ragan, Defendant Godwin, Chair, Department of Pharmacy Practice, and the Academic Misconduct Committee of the School of Pharmacy were informed that Plaintiff had engaged in academic misconduct, and a letter noting the academic misconduct was placed in Plaintiff's school file.

The fourth act occurred in December 2002 when Defendant Kleoppel accused Plaintiff once again of engaging in academic misconduct. Defendant's charge was based on his determination that an assignment recently submitted by Plaintiff, which was designed to be an action oriented exercise, contained work that did not represent Plaintiff's own effort. Kleoppel believed that the submitted work did not represent Plaintiff's own efforts for the following reasons: (1) two of Plaintiff's

---

[9]Plaintiff sent Professor Kleoppel a letter challenging his conclusion that he had engaged in academic misconduct. According to Plaintiff, he had cited the source in his answer, however, for some reason, the source cite was not transmitted with the answer when he submitted it. Plaintiff stated that he had a witness who could collaborate this claim.

[10]This letter also told Plaintiff that he could appeal Defendant Kleoppel's conclusion. Additionally, it stated that a second violation could result in a more serious consequence.

answers contained large sections of text copied word for word from a reference book; (2) one answer contained an exact list from a reference book: (3) three answers failed to acknowledge the sources for which they were derived; and (4) a couple of the answers only listed the procedure for performing the exercise stated in the question, no results, which led Kleoppel to believe that Plaintiff did not actually perform the activities set forth in the assignment. Kleoppel informed Plaintiff of his determination in a letter dated December 17, 2002.

In addition to mailing Plaintiff a letter, Kleoppel also sent the Director of the NTPD Program, Defendant Ragan, a letter on December 9, 2002. In this letter, Kleoppel informed the Director that Plaintiff had engaged in a second act of academic misconduct and that he had given Plaintiff a zero for the entire course. The letter recited the bases for Kleoppel's conclusion.[11] The letter also recommended that Plaintiff be expelled immediately from the program. After reviewing the information submitted to him by Defendant Kleoppel, Defendant Ragan agreed with Defendant Kleoppel's determination and recommendation, and sent a letter to the Chair of the Pharmacy Practice, Defendant Godwin, so stating on December 13. Defendant Godwin also agreed with Defendant Kleoppel. On December 16, Defendant Godwin sent a letter to the School Admissions and Standards Committee, asking it to review the determination and recommendation made by Defendant Kleoppel. The Committee reviewed the pertinent information on December 17 and unanimously agreed that the position taken by Defendant Kleoppel was correct. The Committee forwarded its decision on to the Dean of the School of Pharmacy, Jack Fincham. Based on the Committee's decision and the findings made by Defendants Kleoppel, Ragan, and Godwin, Dean Fincham found that Plaintiff should be dismissed from the program for academic misconduct. Dean

---

[11]Defendant Kleoppel attached a copy of the work submitted by Plaintiff to the letter.

Fincham informed Plaintiff of his decision in a letter he mailed to him on December 20. In addition to stating that Plaintiff was dismissed from the program, the Dean's letter also stated that the reason for dismissal would be noted on Plaintiff's transcript. The letter informed Plaintiff that he had the ability to appeal the Dean's decision to the KU Judicial Board.

Plaintiff filed an appeal in February 2003. Plaintiff was represented by counsel throughout the appeal process. Plaintiff's matter came before the KU Judicial Board on May 3, 2003. During the hearing, Plaintiff had an opportunity to address the Board, present evidence, and cross-examine the School of Pharmacy's witnesses, Defendant Kleoppel, Defendant Ragan, and Dean Fincham.[12] After hearing both sides' arguments and reviewing the submitted evidence, the Board upheld the Dean's decision. The Board transmitted its decision to Plaintiff by letter dated May 28, 2003. Plaintiff has no knowledge of the Board's determination being communicated to anyone outside of the University of Kansas. Plaintiff also has no knowledge of the Defendants', the School Admissions and Standards Committee's, or Dean Fincham's determinations being communicated to anyone outside of the University of Kansas.

Based on the events described above, Mr. Marten filed suit in the United States District Court of the Eastern District of Pennsylvania on December 16, 2003. Mr. Marten's case was ultimately dismissed for lack of jurisdiction on November 23, 2007. Following the dismissal, on February 22, 2008, Mr. Marten filed this suit in the United States District Court of Kansas, alleging both a 42 U.S.C. § 1983 First Amendment retaliation claim and a state-law defamation claim.

---

[12]On direct examination, Defendants Kleoppel and Ragan provided the bases for their conclusions that Plaintiff had engaged in two acts of misconduct. The bases asserted by Defendants at the hearing were, in essence, the same that they had provided in their letters.

Defendants have now moved for summary judgment on both of these claims (Doc. 38). For the reasons stated below, the Court grants Defendants' motion.

## I. Standard of Review

The Court is familiar with the standards governing the consideration of summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[14] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[15] In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[16]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[17] The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[18] If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[19] In doing so, the opposing party may not rely on

---

[13] Fed. R. Civ. P. 56(c).

[14] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[15] *Id.*

[16] *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18] *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[19] *Celotex*, 477 U.S. at 323.

mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[20] The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[21]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[22]

## II. Analysis

As noted above, Plaintiff is asserting two claims: a § 1983 First Amendment retaliation claim and a state-law defamation claim. Defendant has moved for summary judgment on each of these claims. The Court will review these claims in turn.

**Retaliation Claim**

Plaintiff's retaliation claim is premised upon the allegation that Defendants accused him of academic misconduct in retaliation for him complaining about how the NTPD program was being administered. To establish his retaliation claim, Plaintiff must demonstrate: "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct."[23]

---

[20]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[21]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[22]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[23]*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

With respect to the first factor, the Court finds that it is met. In their briefing, Defendants argue that Plaintiff cannot satisfy this factor's requirement because he cannot show that the speech he was engaged in was of public concern. As recently stated by the Tenth Circuit, the public concern doctrine has no place outside of the "public employment setting."[24] Therefore, Plaintiff's speech need not be of public concern in order to be protected.[25] However, just because the public concern test does not apply, does not necessarily mean that Plaintiff's speech is automatically protected. A number of courts have held that in order to be protected the speech in question "must not 'materially and substantially interfere with the requirements of appropriate discipline' or collide with the rights of others."[26] The Court agrees with these courts that this is the proper test for determining whether a college student's speech made in the university context is protected. Here, Defendants have not argued, much less put forward evidence, that Plaintiff's speech was disruptive. As a result, the Court concludes that the speech in question, Plaintiff's complaints, is protected.

The Court also finds that the second factor is met. Defendants contend that Plaintiff cannot satisfy this factor because the injury he claims to have suffered, accusations of academic misconduct, would not chill a person of reasonable firmness from exercising their First Amendment Rights.[27]

---

[24] *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-57 (10th Cir. 2007).

[25] *See, e.g., Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 106 (2d Cir. 2001) (declaring that student speech in the university context does not have to be of public concern to be protected).

[26] *Zwick v. Regents of Univ. of Mich.*, 2008 WL 1902031, at *9 (E.D. Mich. Apr. 28, 2008) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969); *accord Qvyjt v. Lin*, 932 F. Supp. 1100, 1108-09 (N.D. Ill. 1996).

[27] The Court notes that Plaintiff is not only claiming that he was injured by having to face accusations of serious misconduct, but also by being dismissed from the program based on such accusations. Dismissal from a graduate program is without doubt an injury sufficient to establish the second element. *See Zwick*, 2008 WL 1902031, at *9. The question, though, is whether Defendant's actions actually caused the injury. Here, Defendants do not argue that their actions were not the cause of this injury. As a result, the Court will not address this issue. *See, e.g., Buck v. City of*

According to Defendants, in order for their accusations to be actionable, they must be false. The Court disagrees. Defendants have not cited to, nor has this Court discovered, any case in which the presiding court held that accusations of a serious nature must be false in order for the second factor to be satisfied. Courts that have addressed this issue in similar contexts have found that accusations or charges of a serious nature are actionable,[28] regardless of whether they have a basis;[29] the injury is having to face charges of a serious nature. In light of this precedent, the Court finds that when a college student produces evidence showing that a school official has accused him of committing serious academic violations – e.g., allegations that could lead to his expulsion – the second factor's requirements are met. In this case, Plaintiff has presented such evidence. Accordingly, the Court concludes that he has satisfied the second factor.

As to the last factor, however, the Court finds that it has not been met. Under this factor, the plaintiff must show that their protected speech played a substantial part in the defendant's decision to take an adverse action against them.[30] To make this showing, the plaintiff can rely on both direct

---

*Albuquerque*, 291 Fed. Appx. 122, 127 (10th Cir. 2008) (refusing to review the district court's determination that the defendant's actions caused the plaintiff's injuries because the defendant did not raise a causation argument to the district court).

[28]*See, e.g., Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009) (stating that "the *filing* of a disciplinary charge . . . is actionable under section 1983 if done in retaliation for [the inmate's] having filed a grievance pursuant" (emphasis and alterations in the original)); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002), *cert. denied*, 540 U.S. 823 (2003) (stating that a reasonable jury could find that the filing of a retaliatory charge exposing an inmate to a "risk of significant sanctions" could deter persons of "ordinary firmness" from exercising their rights).

[29]*See Zarska v. Higgins*, 171 Fed. Appx. 255, 259 (10th Cir. 2006) (declaring, in a prisoner case, that "even if the disciplinary charge had not been baseless, there is an implicit threat in the filing of a valid charge for retaliatory reasons that would chill further action); *Poole v. County of Otero*, 271 F.3d 955, 960-61 (10th Cir. 2001), *abrogated in part on other grounds by Hartman v. Moore*, 547 U.S. 250, 256 (2006), (finding that "facing criminal charges that were brought in order to hinder or prevent [the plaintiff] from filing a civil lawsuit against defendants is injury sufficient to chill a person of ordinary firmness" and that "the propriety of charging [the plaintiff] in light of his conduct . . . is not relevant to the First Amendment claim").

[30]*Maestras v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005).

and circumstantial evidence. At a minimum, though, the plaintiff's evidence must demonstrate that the defendant actually knew about their engagement in a protected activity before acting.[31]

Here, Defendants claim that Plaintiff cannot prove causation because the record shows that Plaintiff engaged in academic misconduct and that they, as faculty members and administrators in the School of Pharmacy, had a professional, educational obligation to report such conduct. In response, Plaintiff contends that the fact Defendants had a professional, education obligation to report academic misconduct does not preclude a finding that Defendants accused Plaintiff of engaging in such conduct in order to retaliate against him for previous complaints he had made. The Court agrees with Plaintiff that the fact Defendants had an objective basis for acting does not automatically rule out the possibility that Plaintiff can show that a causal link exists.[32] With that said, though, because Defendants have come forward with evidence showing that their actions were motivated by their professional, educational obligations, as opposed to a retaliatory animus, it is incumbent upon Plaintiff to present evidence sufficient to raise a factual question as to what Defendants' real motivation were in order to survive summary judgment. Plaintiff is unable to shoulder this burden.

---

[31]*See, e.g., Morfin v. City of East Chi.*, 349 F.3d 989, 1005-06 (7th Cir. 2003); *see also Maestras*, 416 F.3d at 1189 ("An employer's knowledge of the protected speech, together with *close* temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment." (emphasis in orignal)); *cf. Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (stating, in the Title VII context, that "it is not sufficient that [the defendant] could or even should have known about [the plaintiff's] complaint;" rather, they must prove "actual knowledge"); *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007) (noting, in the ADA context, that "[u]nless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct" (emphasis in original)); *Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (same-Title VII).

[32]*See, e.g., DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.").

In his briefing, Plaintiff argues that retaliation can be inferred from the fact that his complaints were made in close proximity to when Defendants accused him of academic misconduct.[33] Although it is true that adverse actions taken in close proximity to protected activity can raise an inference of causation,[34] such an inference is not created here, at least with regard to two of the defendants, because there is no evidence that Defendant Kleoppel or Defendant Godwin were even aware of such complaints. Plaintiff has not offered one piece of evidence that would enable a reasonable jury to infer that these Defendants had knowledge of any of his complaints. As a result, there is no factual basis for concluding that a causal link existed between these Defendants' actions and Plaintiff's.[35]

As for Defendant Ragan, while there is evidence that he was aware of some of the complaints, the record only supports an inference that he was aware of the complaints that Plaintiff had filed up to June 24, 2002. Defendant Ragan did not write his letter affirming Defendant Kleoppel's finding and recommendation until December 13 though. Thus, nearly six months had elapsed between when Defendant Ragan last knew of Plaintiff's complaints and when he took his adverse action. The Tenth Circuit has held that a time lag of four months or more between when the defendant learns of the plaintiff engaging in protected activity and when the defendant actually takes its adverse action is insufficient, in itself, to establish the necessary causal link.[36] Therefore,

---

[33]*See* Doc. 48, p.26 ("Plaintiff expressed concern over the program to the accreditation council as late as two weeks prior to the first allegation of plagiarism. A nexus can be established between his speech and the subsequent retaliation such that a reasonable fact finder could return a verdict of the Plaintiff on the evidence presented and therefore summary judgment must be denied).

[34]*See, e.g., Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

[35]*See Maestas*, 416 F.3d at 1189 (stating that "[s]peculation or hunches amidst rumor and innuendo will not suffice" to prove causation).

[36]*See Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).

in order for the causation requirement to be met, there must be additional evidence in the record supporting the conclusion that Plaintiff's complaints played a substantial part in Ragan's decision to agree with Defendant Kleoppel's determination that Plaintiff engaged in academic misconduct and should be expelled.[37]

In his response, Plaintiff alleges that, shortly after he had complained to Dean Sorenson about the semester he set out counting toward the time he had to complete the program, Defendant Ragan's failure to respond to his emails, and the fact that he had not been credited with ten points on a question that was thrown out, Defendant Ragan called him in a rage and threatened to have him kicked out of the school. He also alleges that, on May 13, 2002, Defendant Ragan sent him misleading information on how to appeal a grade he had received in a class.

After viewing Plaintiff's evidence in its entirety, the Court concludes that no reasonable jury could find that Plaintiff's complaints played a substantial role in Defendant Ragan's decision to affirm Defendant Kleoppel's finding and recommendation. To begin with, the alleged threat is of little probative value, as it was made more than seven months before Ragan wrote his letter in support of Defendant Kleoppel's conclusions.[38] Furthermore, because Plaintiff's complaints did not implicate Ragan in serious misconduct or wrongdoing, they provided little motive for Ragan to retaliate against Plaintiff.[39] Lastly, and most importantly, the School Admissions and Standards Committee and the KU Judicial Board, after performing their own review of the record, came to

---

[37] *See, e.g., Antonio*, 458 F.3d at 1182.

[38] *See, e.g., Powell v. United Ins. Co.*, 2006 WL 1674463, at *11 (E.D. Wis. June 16, 2006) (holding that a threat made two months before termination was too attenuated to create a suspicion of a causal connection).

[39] *See Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon County*, 587 F.3d 1223, 1241 (10th Cir. 2009) (discussing, at the summary judgment stage, whether the defendant had a strong motive for retaliating against the plaintiff for his speech).

the same conclusion as Defendant Ragan.[40] This fact is particularly telling in this case because of the limited role that Defendant Ragan played in this manner. Unlike the defendant in other cases,[41] Ragan did not make the initial decision to accuse Plaintiff of engaging in prohibited conduct; rather, he merely reviewed the decision to determine if it were justified. Thus, the fact that two non defendants, who were acting in the same capacity, reviewing Defendant Kleoppel's initial decision, came to the same conclusion as he did is strong evidence that Defendant Ragan did not act with retaliatory intent.[42] Therefore, in light of this evidence, and lack of weighty evidence to the contrary, the Court finds that a material factual question does not exist as to whether Defendant Ragan's actions were substantially motivated by Plaintiff's exercise of his First Amendment rights.

In sum, the Court finds that Plaintiff has failed to raise a factual question as to the third factor of his retaliation claim, and, thus, summary judgment is warranted on this claim. Due to this finding, the Court will not address Defendants' argument that they are immune from suit based on qualified immunity.[43]

---

[40]While Plaintiff may disagree with the findings made by the non defendants, he has failed to provide this Court with any basis for overriding their decisions. As noted by the Supreme Court, an academic decision should be overridden only when there is "a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). Here, there is nothing in the record that would support a finding that any member of the committee or board did not exercise their professional judgment. Accordingly, the Court will not override their decisions.

[41]*See, e.g., Haynes*, 588 F.3d at 1156 (the defendant was the person who instigated the charges against the plaintiff).

[42]*Cf. Hand v. N.Y.C. Transit Auth.*, 159 Fed. Appx. 282, 283 (2d Cir. 2005) (stating, in the Title VII context, "that 'a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link' between [the plaintiff's] protected activity and her termination" (quoting *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002))).

[43]*See, e.g., Petersen v. Farnsworth*, 371 F.3d 1219, 1224 (10th Cir. 2004).

**Defamation Claim**

Plaintiff's defamation claim is based upon the allegation that Defendants falsely accused him of academic misconduct during the appeal process.[44] "To prevail on his defamation claim, [Plaintiff] must prove (1) false and defamatory words; (2) communicated to a third person; and (3) which injured [his] reputation."[45] Defendants contend that they are entitled to summary judgment on Plaintiff's defamation claim for the following reasons: (1) truth is an absolute defense; (2) Plaintiff cannot show publication to a third party; (3) Defendants' communications were privileged; and (4) Plaintiff cannot show injury to his reputation. Because the Court concludes that Plaintiff cannot prove that Defendants' allegations were false and defamatory, it grants Defendants' summary judgment without addressing the remaining grounds.[46]

Before turning to the facts of this case, it is necessary for the Court to set forth the applicable law for determining whether a statement is actionable. Under § 566 of the Restatement

---

[44]Plaintiff does not specifically identify the alleged false and defamatory statements made by Defendants. As pointed out by Defendants, a plaintiff must bring a claim for defamation within one year of when the defamatory statement is published. *See Witt v. Roadway Express*, 880 F. Supp. 1455, 1464 (D. Kan. 1995), *aff'd in part, rev'd in part on other grounds*, 136 F.3d 1424 (10th Cir.), *cert. denied*, 528 U.S. 881 (1998) (citing K.S.A. 60-514). Here, Plaintiff brought suit on December 16, 2003. As a consequence, only those defamatory statements that were published after December 16, 2002, are actionable. Here, each Defendant accused Plaintiff of engaging in academic misconduct after December 16, 2002. (In Defendants' motion, Defendant Ragan erroneously argues that he never accused Plaintiff of academic misconduct after December 16, 2002. This assertion is incorrect for two principal reasons. First, there is evidence that his letter stating that he shared Defendant Kleoppel's conclusion that Plaintiff had engaged in academic misconduct was reviewed by Dean Fincham after December 16, 2002. *See, e.g., Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc.*, 2006 WL 2254818, at *3 (S.D.N.Y. Aug. 7, 2006) ("A libelous writing is published when it is read by a person other than the author and the one defamed."). Second, Defendant Ragan expressed his opinion that Plaintiff had engaged in academic misconduct at the May 3, 2003, hearing.) Therefore, none of them is entitled to summary judgment on Plaintiff's defamation claim on statute of limitations grounds. Because Plaintiff saw no need to differentiate between the statements made by Defendants, and Defendants' statements are materially the same, the Court will treat them as one in its analysis.

[45]*Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1384 (D. Kan. 1996); *accord Hall v. Kan. Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495, 504 (2002).

[46]*See, e.g., Bundren v. Parriott*, 245 Fed. Appx. 822, 826-27 (10th Cir. 2007) (declining to address the defendant's alternative arguments because it concluded that the plaintiff could not show that the statements made against him were false and defamatory).

(Second) of Torts, "provided that the facts underlying [it] are fully disclosed and those facts are themselves not false and defamatory, [an] opinion is not actionable."[47] Although the Kansas Supreme Court has not expressly adopted § 566, the Tenth Circuit has held that it believes that the Kansas Supreme Court would apply § 566 if it had to decide the issue.[48] Therefore, this Court will apply § 566.

Based on the context in which they were transmitted, it is clear that Defendants' allegations that Plaintiff engaged in academic misconduct are opinions.[49] As a result, Plaintiff's defamation claim turns on (1) whether Defendants provided the factual bases for their opinions and (2) whether these bases are substantially true.[50] With regards to the first inquiry, the Court finds that it is satisfied. Defendants stated that their basis for concluding that Plaintiff engaged in academic misconduct in September was that he quoted a source in one of his answers but did not credit it.[51] They also stated that their bases for concluding that Plaintiff engaged in academic misconduct in December were: (1) two of Plaintiff's answers contained large sections of text copied word for

---

[47]*See Bundren*, 245 Fed. Appx. at 828 n.5. "The rationale behind this rule is straightforward: When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented . . . ." *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995); *accord Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir.), *cert. denied*, 474 U.S. 843 (1985).

[48]*Bundren*, 245 Fed. Appx. at 828 n.5.

[49]*See Bundren v. Parriott*, 2006 WL 1805867, at *9 (D. Kan. June 29, 2006), *aff'd*, 245 Fed. Appx. 822 (treating the defendant's statements that the plaintiff "gave testimony based on an incomplete review of the facts available to him," "gave testimony outside his area of clinical experience," "gave testimony regarding medical fact that was inaccurate and misleading" as opinions even though the defendant did not preface these statements with the words "in my opinion"); *Goralski v. Pizzimenti*, 540 A.2d 595, 598 (Pa. Commw. Ct. 1988) (finding statement that the plaintiff was terminated "due to misconduct" was "mere opinion).

[50]*See Ruebke v. Globe Commc'ns Corp.*, 241 Kan. 595, 598, 738 P.2d 1246, 1250 (1987) (stating that the published statement must only be "substantially true").

[51]The School of Pharmacy considers submitting the work of another as one's own to be academic misconduct.

-16-

word from a reference book; (2) one answer contained an exact list from a reference book: (3) three answers failed to acknowledge the sources for which they were derived; and (4) a couple of the answers only listed the procedure for performing the exercise stated in the question, no results, which led Kleoppel to believe that Plaintiff did not actually perform the activities set forth in the assignment. Thus, Defendants disclosed the bases for their opinions.

The Court also finds that the second inquiry is met. Plaintiff has put forth no evidence that the copy of the September assignment that Defendant Kleoppel received actually credited the source from which the quote was derived. Furthermore, Plaintiff has not presented evidence that any of the bases for Defendants' conclusions that Plaintiff engaged in academic misconduct in December are not substantially true.[52] The fact that Plaintiff disagrees with Defendants' conclusion that the aforementioned bases demonstrate that he was trying to pass another's work off as his own is of no consequence.[53] All that had to be shown in this case was that Defendants' disclosed the bases of their opinions and that these bases were substantially true. Because such a showing was made, Defendants are entitled to summary judgment on Plaintiff's defamation claim.

---

[52]Plaintiff's contention that all of his answers to the December assignment contained a reference to the work they were derived from is erroneous. Answers nine, ten, and eleven do not state a source.

[53]*See, e .g., Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497, 501 (Pa. Commw. Ct. 2002) (applying Pennsylvania law, which has adopted the Restatement (Second) of Torts § 566, and stating that "[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is"). The Court notes that in this case that Defendants' opinions do not appear to be either unjustified or unreasonable, as three non defendants came to the same conclusion as they did.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 38) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 2nd day of August, 2010.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE